UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                          :

KENT DAVIS,                             :

                      Plaintiff,      :

                             :

                v.               :       17 Civ. 5793 (KPF)

                             :

ERICA WHILLHEIM, CYNTHIA ARREOLA,  :    **OPINION AND ORDER**
DOMINIQUE MANFREDA, GLORIA AVERY,  :
CRYSTAL PIERRE, AMY B. MILANO, and  :
CITY OF NEW YORK,              :

                             :

                    Defendants. :

                             :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      In February 2008, Plaintiff lost custody of his three-year-old daughter

(the "Child") after he stabbed her mother (the "Mother") repeatedly about the

face and body with a kitchen knife. After the Family Court of the State of New

York (the "Family Court") denied his request for visitation in 2015, Plaintiff,

proceeding *pro se* and *in forma pauperis*, brought claims under 42 U.S.C.

§ 1983 against the Child's counselors and their supervisors — specifically,

counselors Erica Whillheim, Cynthia Arreola, Amy B. Milano, Dominique

Manfreda, and Gloria Avery (the "Counselors"), as well as New York City

Administration for Children's Services ("ACS") social worker Crystal Pierre and

the City of New York (together with Pierre, the "City Defendants," and together

with the Counselors and Pierre, "Defendants"). Broadly, Plaintiff alleges that

he has been denied a relationship with the Child because of a series of

defective and biased reports submitted to the Family Court by the Counselors.

In addition to his federal claims, Plaintiff asserts state-law claims over which he asks this Court to exercise supplemental jurisdiction.

Cynthia Arreola, Dominique Manfreda, and the City Defendants (together, the "Moving Defendants") now move to dismiss the Amended Complaint.[1]  For the reasons set forth in this Opinion — and while in no way minimizing or contesting Plaintiff's devotion to his daughter — the Court dismisses with prejudice Plaintiff's federal claims against the Moving Defendants, but denies without prejudice the motion to dismiss the state and local claims against them.[2]

---

[1]    Defendant Gloria Avery was served on March 6, 2018, but has yet to appear in this action.  (Dkt. #30).  Defendants Erica Whillheim and Amy Milano were not served with the Amended Complaint within the 90-day period specified in Fed. R. Civ. P. 4.

[2]    This Opinion draws facts principally from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #9)), which facts are taken as true for the purposes of the pending motion.  The Court has adopted the mode of pagination employed by the Court's electronic case filing system in citing to the Amended Complaint.  The Court refers to the transcript of the hearing it held on May 30, 2018 ("May 30 Tr." (Dkt. #51)), at which certain factual assertions were made by Plaintiff.

The Court also relies on exhibits provided in the Declaration of Evan Schnittman in Support of City Defendants' Motion to Dismiss Plaintiff's Complaint.  (Dkt. #62).  These exhibits include: (i) the Petition dated February 26, 2008, filed by ACS pursuant to Article 10 of the New York Family Court Act, alleging that Plaintiff abused the Child (Schnittman Decl., Ex. A (Dkt. #62-1 (the "Abuse Petition"))); the Family Court Order issued by Judge Susan K. Knipps on February 26, 2008, upholding the removal of the Child (Schnittman Decl., Ex. B (Dkt. #62-2 (the "Removal Order"))); and the Family Court Order issued by Judge Knipps on May 11, 2015 (Schnittman Decl., Ex. F (Dkt. #62-6 (the "Visitation Order"))).  The Court also takes into consideration the 2008 and 2009 reports signed by Defendants Milano, Arreola, and Whillheim, attached to the Declaration of Evan Schnittman as Exhibit I (Schnittman Decl., Ex. I (Dkt. #62-9 (the "Reports"))); the Court refers to each Report by date, e.g., the "May 30, 2008 Report," the "November 13, 2008 Report," the "July 25, 2008 Report," the "February 6, 2009 Report," and the "August 18, 2009 Report."  The manner in which the Court may consider these documents is discussed *infra*.

Motions to dismiss have been filed by three groups of Defendants: the City Defendants, Arreola, and Manfreda.  For ease of reference, the memoranda of law in support of the respective motions to dismiss will be referred to as "City Def. Br." (Dkt. #63), "Arreola Def. Br." (Dkt. #69), and "Manfreda Def. Br." (Dkt. #72); Plaintiff's combined Memorandum of Law in Opposition to the Motions to Dismiss will be referred to as "Pl. Opp." (Dkt. #82); and the reply briefs filed by the three groups of Defendants will be

# BACKGROUND

## A.     The 2008 Incident of Domestic Violence and Loss of Custody

The Court assumes the truth of all well-pleaded allegations.  On February 22, 2008, Plaintiff returned home intoxicated, and began arguing with the mother of his three-year-old daughter in the living room of their home. (Abuse Petition, Add. 3 ¶ 2).  As the fight escalated, Plaintiff went into the kitchen, and returned to the living room with a kitchen knife.  (*Id.*).  Plaintiff then stabbed the Mother approximately seven times before punching her repeatedly.  (*Id.*).  The Child was in the home at the time of the attack.  (*Id.*).[3]

Realizing that the Mother needed medical attention, Plaintiff called 911. (May 30 Tr. 6:20-7:05).  When the police arrived, Plaintiff was taken into custody.  (*Id.* at 9:07-10).  The Mother was hospitalized in critical condition with a collapsed lung, and required multiple stitches on her head, neck, and hands.  (Abuse Petition, Add. 3 ¶ 2).

That same night — or, more precisely, very early the next morning — the Child was removed from her parents' custody on an emergency basis by ACS, pursuant to Family Court Act § 1024.  (Abuse Petition ¶ 5).  On February 26, 2008, ACS filed the Abuse Petition in Family Court, requesting that the

---

referred to as "City Def. Reply" (Dkt. #88), "Arreola Def. Reply" (Dkt. #84), and "Manfreda Def. Reply" (Dkt. #91).

[3]     The Child's precise location in the home at the time of the attack is unclear.  The Abuse Petition states that the Child "witnessed the incident, and upon seeing her mother being attacked screamed out, '[W]hy are you doing this to my mommy!'"  (Abuse Petition, Add. 3 ¶ 2).  Plaintiff contends that the Child was awake, but in the bedroom, at the time of the attack.  (May 30 Tr. 5:14-20).  He claims that he only later brought her into the living room to open the door for the police.  (*Id.* at 6:20-7:05).

removal of the Child be sanctioned by court order. (*Id.* at ¶¶ 1-10; Am. Compl. 2, 5). The Abuse Petition alleged that, based on the February 22 assault, Plaintiff had subjected the Child to undue emotional, mental, or physical harm, or risk thereof. (Abuse Petition, Add. 1 ¶ 1). Plaintiff characterizes the Abuse Petition as "alleging that [he] had *abused* his daughter even though [there was no] evidence of physical harm to the child." (Am. Compl. 1 (emphasis in original)). Defendant Pierre, an ACS employee, signed the Abuse Petition. (Abuse Petition 2; Am. Compl. 5)).

In response to the Abuse Petition, Family Court Judge Susan K. Knipps upheld the removal of the Child and placed her in ACS's custody. (Removal Order 5). The Mother recovered from her injuries over time, and ultimately regained custody of the Child. (May 30 Tr. 7:24-8:05, 9:24-10:10). Plaintiff, who was convicted of Assault in the First Degree and Endangering the Welfare of a Child, remained incarcerated until July 2017. (*Id.* at 9:14-23; Visitation Order 3).

## B. Plaintiff's 2008 Request for Visitation and Social Worker Reports

On June 12, 2008, while incarcerated, Plaintiff filed a motion seeking visitation or other contact with the Child. (Visitation Order 2). The Family Court denied Plaintiff's request based, at least in part, on reports from the Child's counselor, Defendant Milano. (*Id.*). Milano noted that the Child was showing clear signs of PTSD and recommended that she have no contact with Plaintiff. (*Id.*).

4

At the time in question, Milano was a licensed social worker at the
Family Peace Program ("FPP"), an organization that provides mental health
services to children who have witnessed various forms of trauma, including
domestic violence. (November 13, 2008 Report). After the attack, Milano began
meeting with the Child and the Mother once a week for one hour at a time.
(*Id.*).

Plaintiff characterizes these sessions as "interviews" that took place
"without [his] presence, permission or knowledge." (Am. Compl. 2). Because
the Child was only three years old at the time, she "[c]ould not fully understand
the nature of the questioning [she was subjected to] ... without parental
supervision." (*Id.* at 3).

Beginning in May 2008, Milano submitted reports to Family Court
regarding the Child's progress. Those reports, and the recommendations they
contained, are at the heart of Plaintiff's allegations, and are detailed below.[4]

### 1.     The May 30, 2008 Report



---

[4]     Because of their sensitive nature, these materials have been redacted from the publicly-
filed version of this Opinion. The unredacted version of the Opinion will be filed under
seal.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

2.    **The November 13, 2008 Report**

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

3.    **The July 25, 2008 Report**

[REDACTED]

[REDACTED]

### 4. The February 6, 2009 Report

More than six months later, Milano submitted her fourth report. ▮

[black bar]

[black bar]

[black bar]

[black bar]

[black bar]

[black bar]

[black bar]

[black bar]

### 5. The August 18, 2009 Report

Unlike the preceding four reports, which were signed only by Defendant Milano, the August 2009 report was signed by three Defendants with different roles at FPP: Amy Milano as Treating Clinician; Erica Whillheim as Clinical Supervisor; and Cynthia Arreola as Project Manager. (August 18, 2009 Report). Plaintiff alleges that *all* reports drafted by Defendants Pierre, Milano, Manfreda, and Avery were drafted under the supervision of Defendants Whillheim and Arreola and, worse yet, were improperly "drafted to imply physical harm." (Am. Compl. 5).



**C. Termination of ACS Supervision**

On December 4, 2008, Plaintiff voluntarily submitted to a finding that he abused the Child pursuant to § 1051(a) of the Family Court Act, based on the allegations in the Abuse Petition. (Visitation Order 2). In April 2009, Judge Knipps ordered that the Child be released into the custody of her Mother with the supervision of ACS. (*Id.*). Several months later, following Plaintiff's conviction at trial, ACS requested that the court modify the order and terminate ACS's supervision of the case. (*Id.* at 3). Because the Mother was providing adequate care for the Child and Plaintiff was incarcerated, ACS found no need for their continued supervision of the Mother's home. (*Id.* at 3-5). On October 6, 2009, Judge Knipps granted ACS's request, inviting Plaintiff to file a visitation petition in the future if and when he believed he could establish that visitation was in the Child's best interests. (*Id.* at 5).

**D. Plaintiff's 2013 Request for Visitation**

On April 12, 2013, Plaintiff filed what the Family Court construed as a petition for visitation against the Mother (the "Visitation Proceeding"). (Visitation Order 7; Am. Compl. 2). Because the court had terminated ACS's supervision four years earlier, ACS was not a party to the Visitation Proceeding. As part of his request, Plaintiff sought a forensic evaluation of the Child and the parties. (Visitation Order 7). Plaintiff argued that it was in the Child's best

interest to be able to develop a healthy relationship with her father through visitation. (*Id.* at 6). He also alleged a change in circumstances in that he had completed a course in "anger management" and "people relations." (*Id.*). Both Mother and Child, who were separately represented by counsel, opposed the petition. (*Id.* at 6-7).

On May 11, 2015, Judge Knipps denied Plaintiff's petition, finding that Plaintiff had failed to plead a sufficient change of circumstances, despite completing the anger management course. (Visitation Order 8-9). Relevant to the instant action, Judge Knipps's Order relied on the clinician recommendations in the August 18, 2009 Report signed by Defendants Milano, Whillheim, and Arreola:

> The letter submitted by [the Child's] clinicians in August 2009 set forth the specific steps that would need to be taken to ensure that the father's resumption of contact would not be detrimental to the Child, including Mr. Davis working with a mental health profession to develop an understanding of early childhood trauma. In the absence of any allegation that the father has accomplished those basic prerequisites, the court finds that he has failed to allege a sufficient change in circumstances indicating that an order of visitation would be in the Child's best interests.

(*Id.* at 9).

Next, the court determined that it had adequate information to make a finding that contact with the Plaintiff would not be in the Child's best interest. (Visitation Order 10-13). In doing so, Judge Knipps discussed an affidavit from Defendant Manfreda that had been submitted by the Child's attorney. (*Id.*). In that affidavit, Manfreda discussed an interview she had had with the Child on

September 25, 2014, during which the Child stated that she was "not ready" for visits with her father at that time. (*Id.* at 11). Manfreda noted that the Child's behavior changed drastically when discussing topics related to her father and opined that the Child "still exhibits signs of PTSD, specifically dissociative behaviors and the inability to process overwhelming feelings." (*Id.*).

Plaintiff alleges that Manfreda, when drafting her report, relied on "defective reports" previously submitted by Defendant Milano in 2008 and 2009. (Am. Compl. 1). Manfreda's 2014 affidavit was "clearly a copy of [Milano's] previous report." (*Id.* at 5). And both Manfreda and Milano, according to Plaintiff, "made no effort to contact interview or include [Plaintiff] when preparing these reports." (*Id.* at 1). Instead of completing a "thorough and complete investigation," Manfreda simply "mimicked" Milano's earlier reports. (*Id.* at 4).

Manfreda's affidavit also relied on two conversations she had had with Defendant Avery, the Child's therapist at the time. Manfreda lists the conversations as occurring on November 21, 2014, and January 16, 2015. (Visitation Order 11). Plaintiff provides the date as "August 2014." (Am. Compl. 2). Despite the temporal disagreement, Manfreda and Plaintiff agree that Avery had concluded that it was not in the Child's best interest to have contact with her father. (*Id.*; Visitation Order 11-12).

Based on the record before her, Judge Knipps dismissed Plaintiff's petition without prejudice, and invited Plaintiff to refile "at a future time when circumstances have sufficiently changed as to warrant revisiting the issue of

visitation." (May 11, 2015 Order 13; Am. Compl. 1).  Plaintiff subsequently appealed the court's order to the Appellate Division, First Department, which affirmed Judge Knipps's order on December 1, 2016.  (Am. Compl. 1).

## E.    The Instant Action

On July 31, 2017, in lieu of filing a renewed petition for visitation in Family Court, Plaintiff filed suit in this Court, seeking $9,000,000 in compensatory damages.  (Dkt. #1).  On September 26, 2017, the Court directed Plaintiff to file an amended complaint to cure defects in his original complaint.  (Dkt. #6).  Plaintiff filed the Amended Complaint on December 7, 2017.  (Dkt. #9).

On April 14, 2018, the City Defendants and Defendant Arreola notified the Court of their intention to file motions to dismiss the Amended Complaint.  (Dkt. #37, 38).  Counsel for Defendant Manfreda filed a notice of appearance shortly thereafter.  (May 30 Tr. 37:24-38:02).  On May 30, 2018, the Court held a pre-motion conference with Plaintiff and counsel for the Moving Defendants, at which time the Court set a briefing schedule for the motions.  (Dkt. #51).  The Moving Defendants timely submitted their opening briefs by July 30, 2018.  (Dkt. #61-63, 67-72).  Plaintiff's response in opposition was due on September 28, 2018.  (Dkt. #49).

On October 30, 2018, having received no response from Plaintiff, the Court ordered Plaintiff to submit a response by November 30, 2018.  (Dkt. #76).  Failure to do so, the Court warned, would result in dismissal of the case.  (*Id.*).  On December 4, 2018, the Court dismissed the case without prejudice.

(Dkt. #80). However, on December 6, 2018, 69 days after Plaintiff's response was due, the Court received Plaintiff's opposition to the motions. (Dkt. #82). Accordingly, the Court reopened the case. (Dkt. #83).

On January 18, 2019, the Moving Defendants timely submitted their reply briefing. (Dkt. #84, 88, 91). Unprompted by the Court, Plaintiff filed another response to the motions. (Dkt. #92). The Court has determined that, aside from minor formatting changes, this document is identical to the opposition Plaintiff filed on December 6, 2018. (*Compare* Dkt. #82, *with* Dkt. #92). Accordingly, the motions are fully briefed and ripe for decision.

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Under Rule 12(b)(6)

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters Health Fund* v. *Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013). But while a plaintiff must demonstrate the plausibility of his claims, he need not show that a judgment in his favor is probable. *Iqbal*, 556 U.S. at 678.

Moreover, the Court is obligated to construe the submissions of a *pro se* litigant like Plaintiff liberally "to raise the strongest arguments they suggest." *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see generally McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017). To this end, the Court has considered factual assertions made by Plaintiff during the pre-motion conference on this matter and in his opposition papers. *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

### 2. Documents the Court May Consider in Resolving a Motion Under Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).

The Court may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as arrest reports, indictments, and criminal disposition data. *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-75 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); see also *Awelewa* v. *New York City*, No. 11 Civ. 778 (NRB), 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) (judicial notice may be taken of arrest reports, criminal complaints, indictments, and criminal disposition data (citing *Wims* v. *N.Y.C. Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011))). Where the Court takes judicial notice, it does so "in order to determine what statements [the public records] contained ... not for the truth of the matters asserted." *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphases omitted) (quoting *Kramer*, 937 F.3d at 774).

### 3. Section 1983 Claims Generally

Plaintiff brings claims under Section 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt* v. *Cole*, 504 U.S. 158, 161 (1992) (citation omitted). As such, a "§ 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's

actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis* v. *County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985) ("By its terms, of course, [Section 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.").

## B.    Analysis

### 1.    The Court Will Consider Documents Outside the Pleadings

As a threshold matter, the Moving Defendants urge the Court to consider documents outside the pleadings when assessing the sufficiency of Plaintiff's claims.  (City Def. Br. 8-9; Arreola Def. Br. 5-7).  Here, the Court takes into consideration those documents that are integral to Plaintiff's Amended Complaint, including: (i) the Reports signed by Defendants Milano, Arreola, Whillheim, and Avery, which were submitted in connection with the Child's ongoing treatment; (ii) the Abuse Petition, signed by Defendant Pierre; and (iii) the Visitation Order, denying Plaintiff's motion for visitation.

Both the terms and the effect of these documents are heavily at issue here, rendering the documents integral to the Amended Complaint.  *See Chambers*, 282 F.3d at 153.  Plaintiff references one or more of the reports when defining his claims, each of which depends on the allegedly defective reports.  Because each document goes "to the heart of some claim of the plaintiff's as pleaded in the complaint," the Court may properly consider these materials.  *Chiaramonte* v. *Animal Med. Ctr.*, No. 13 Civ. 5117 (KPF), 2014 WL

3611098, at *4 (S.D.N.Y. July 22, 2014) (quoting *Chambers*, 282 F.3d at153) (internal quotations omitted).

In addition, the Court takes judicial notice of publicly available filings, orders, and appeals in the Family Court system. These include additional Family Court orders and the First Department decision denying Plaintiff's appeal. *See Alaimo* v. *Cohen*, No. 07 Civ. 7625 (KMK), 2008 WL 4202267, at *1 n.1 (S.D.N.Y. Sept. 10, 2008) (taking judicial notice of an Appellate Division decision); *see also Lomnicki* v. *Cardinal McCloskey Servs.*, No. 04 Civ. 4548 (KMK), 2007 WL 2176059, at *1 n.1 (S.D.N.Y. July 26, 2007) (taking judicial notice of relevant Family Court orders).

### 2. Timeliness of Plaintiff's § 1983 Claims

Before addressing the merits of Plaintiff's claims, the Court must first address the antecedent issue of timeliness. The statute of limitations for claims under § 1983 depends on the law of the state in which the claims are brought; in New York, the applicable statute of limitations is three years. *See Patterson* v. *Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). The statute of limitations for a claim under § 1983 begins to run "once the plaintiff knows of the injury on which the claim is based." *Jaghory* v. *N.Y.S. Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997). Because Plaintiff initiated this action on July 31, 2017, the earliest date by which a timely claim could have accrued under § 1983 is July 31, 2014.[5]

---

[5]     The Court notes that Plaintiff, with the leave of the Court, filed an Amended Complaint on December 7, 2017. (Dkt. #6, 9). Because the Amended Complaint "does not allege a new claim but renders prior allegations more definite and precise," the Court finds that it relates back to the date of the original pleading pursuant to Federal Rule of Civil

### a. Plaintiff's § 1983 Claims Against the City Defendants Are Time-Barred

Plaintiff's § 1983 claims against City Defendants flow exclusively from the February 26, 2008 Abuse Petition filed by ACS employee Crystal Pierre.[6] (Am. Compl. 2, 5). Several days earlier, following Plaintiff's attack on the Mother, ACS had removed Plaintiff's daughter from his custody on a temporary and emergency basis. (Visitation Order 1-2). ACS then filed the Abuse Petition, asking the Family Court to uphold the removal; the Family Court granted the Petition on February 26, 2008. (*Id.*). Accordingly, Plaintiff's § 1983 claims against the City Defendants began accruing on February 26, 2008, nine years before Plaintiff initiated this action.

Due to the three-year statute of limitations, Plaintiff's claims against City Defendants are time-barred unless equitable tolling renders them timely. "[A] litigant seeking equitable tolling must establish two elements: [i] that he has been pursuing his rights diligently, and [ii] that some extraordinary circumstance stood in his way and prevented timely filing." *Bolarinwa* v. *Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (internal quotation marks omitted).

---

Procedure 15(c). *Slayton* v. *Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006). Further, as detailed below, the issue of whether Plaintiff's claims accrued on or before July 31, 2017, or December 7, 2017, is not dispositive of the timeliness issue.

[6]  In the Amended Complaint, Plaintiff alleges that Defendant Gloria Avery is also an ACS social worker. (Am. Compl. 2). In point of fact, Ms. Avery was not an employee of the city. ACS has no record that anyone by that name is a current or former employee. (Dkt. #18). In addition, Judge Knipps's May 11, 2015 Order describes Ms. Avery as the Child's "current therapist at Metropolitan Center for Mental Health," a not-for-profit mental health services clinic. (*Id.*; Visitation Order 11).

Construing the pleadings in the light most favorable to Plaintiff, the Court finds nothing in the record to suggest that the statute of limitations should be equitably tolled. In his opposition, Plaintiff argues that he "actively pursued his rights as a parent," and "has been active in every stage of the jurisdiction of the proper courts to the full exhaustion of remedies to resolve and restore" those rights. (Pl. Opp. 2). However, Plaintiff's proceedings in Family Court had no effect on his ability to initiate the instant action at an earlier date. To the contrary, his participation in the Family Court proceedings indicates that he had contemporaneous knowledge of the harm suffered — the loss of custody of the Child due to allegedly defective reports — and was able to file suit at an earlier date.

In addition, no extraordinary circumstances prevented Plaintiff from timely filing his complaint. Plaintiff argues that he faced "difficult obstacles" in bringing his claims because he attempted to do so while incarcerated, with limited access to legal representation or "legal tools." (Pl. Opp. 2). However, incarceration or a lack of education and unfamiliarity with the legal system do not warrant equitable tolling. *See Huang* v. *United States*, No. 03 Civ. 3755 (RPP), 2003 WL 22272584, at *3 (S.D.N.Y. Oct. 2, 2003) ("The district courts in the Southern District have unanimously found that ... [the] lack of familiarity with the legal system [is] not [a] 'rare and exceptional' circumstance, and thus [is] not grounds for equitable tolling."); *see also Tamayo* v. *United States*, No. 05 Civ. 9001 (SAS), 2008 WL 417674, at *3 (S.D.N.Y. Feb. 13, 2008) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted access to

the law library and an inability to secure court documents do not qualify as extraordinary circumstances.").

Plaintiff brought his claims against the City Defendants six years after the statute of limitations expired. Because this case is not one of those "rare and exceptional circumstances … in which a party is prevented in some extraordinary way from exercising his rights," equitable tolling does not render Plaintiff's claims timely. *Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) (internal citations and quotations omitted).[7]

### b. Plaintiff's § 1983 Claims Against Defendant Manfreda Are Timely

As opposed to his claims against City Defendants, Plaintiff's claims against Defendant Manfreda involve conduct that occurred in 2013 and thereafter, concerning Plaintiff's request for visitation. To review, on April 12, 2013, Plaintiff filed a petition for visitation with the Child. (Visitation Order; Am. Compl. 2). On May 11, 2015, Judge Knipps denied the petition, relying, at least in part, on an affidavit from Manfreda. (Visitation Order 10-14).

---

[7]     In his opposition, Plaintiff suggests in passing that the limitations period began to run on December 1, 2016, when the First Department affirmed Judge Knipps's order denying a modification to visitation. (Pl. Opp. 2). If that were the case, Plaintiff would be "well within" the statute of limitations. (*Id.*). For two reasons, however, the Court disagrees. *First*, a Section 1983 claim accrues when "the plaintiff knows or has reason to know of the harm" of which he complains. *Eagleston* v. *Guido*, 41 F.3d 865, 871 (2d Cir. 1994). Plaintiff became aware of the harm in February 2008, and not upon the completion of his Family Court appeal. *Second*, the First Department's decision is irrelevant to Plaintiff's claims against City Defendants. That decision was an appeal from Judge Knipps's order dismissing Plaintiff's 2013 request for visitation. (Am. Compl. 1). ACS was not a party to the 2013 action, and Judge Knipps did not rely on the Abuse Petition in making her findings. (Visitation Order). In point of fact, ACS had not had any involvement in the case since October 6, 2009, when the Court terminated ACS's supervision. (*Id.* at 3-5).

Precisely when Plaintiff's claims against Manfreda began to accrue is unclear for two reasons. *First*, the precise date of Manfreda's affidavit is unknown. Plaintiff alleges that the report was submitted on September 25, 2014. (Pl. Opp. 5). However, the affidavit recounts a January 15, 2015 conversation between Manfreda and the Child's therapist, and therefore was submitted sometime between January and May 2015. (Visitation Order 11).[8] *Second*, in addition to the date of the affidavit itself being unclear, Plaintiff does not make any allegations in the Amended Complaint regarding when he knew, or had reason to know, of the affidavit, and therefore the harm.

Yet, despite these uncertainties, Plaintiff's § 1983 claims against Manfreda are undoubtedly timely. January 15, 2015, is the earliest date Plaintiff's claims would have started to accrue. Of course, that date unrealistically assumes that (i) Manfreda immediately drafted her report and (ii) Plaintiff was contemporaneously aware of its submission to the Family Court. It is more likely that Manfreda drafted her report at some point prior to May 11, 2015, and that Plaintiff became aware of the harm when Judge Knipps issued her Visitation Order. However, because both dates fall within the statute of limitations, the discrepancy is immaterial.

### c. Plaintiff's § 1983 Claims Against Defendant Arreola Concerning the 2013 Petition for Visitation Are Timely

Finally, the Court addresses the timeliness of Plaintiff's claims against Defendant Arreola. Those claims span a longer period because they involve two

---

[8]  Plaintiff's confusion may stem from the fact that the affidavit describes a conversation Manfreda had with Plaintiff's daughter on September 25, 2014. (Visitation Order 11).

clusters of reports: the 2008-2009 reports, and the later reports submitted in connection with the 2013 Visitation Proceeding. Although Plaintiff alleges that Arreola only signed one report — the August 18, 2009 report — he claims that all reports drafted by Defendants Pierre, Milano, Manfreda, and Avery were drafted under Arreola's supervision. (Am. Compl. 5). Therefore, the Court must address the timeliness of Plaintiff's claims with regards to all reports referenced in the Amended Complaint.

The Court begins with the reports submitted in connection with the 2013 Visitation Proceeding. As previously discussed, in early 2015, as part of the Visitation Proceeding, the Child's attorney submitted an affidavit from Manfreda. For the same reasons as discussed above, any claims predicated on that report — including claims against Arreola in her alleged capacity as Manfreda's supervisor — are timely.

Next, the Court turns to Plaintiff's claims against Arreola that are predicated on the 2008 and 2009 reports. Again, Plaintiff makes no allegations regarding when he became aware of these reports. However, the Court finds that Plaintiff should have been aware of any harm caused by them no later than October 6, 2009. On August 19, 2009, ACS filed a petition seeking to modify the order of disposition to terminate ACS supervision. (Visitation Order 3). Attached to the petition was the last of the 2008 and 2009 reports, dated August 18, 2009, which had been signed by Defendants Milano Arreola, and Whillheim. (*Id.*). On October 6, 2009, when the Family Court granted ACS's motion, Plaintiff had a complete cause of action. (*Id.* at 5). Therefore,

Plaintiff's claims against Arreola for these reports, having accrued nearly eight years prior to the initiation of this lawsuit, are not timely.

However, despite the fact that Plaintiff did not raise this argument, the Court will consider whether Plaintiff's claims against Arreola are premised on a continuing wrong, potentially rendering them timely. Although a § 1983 claim generally accrues when the plaintiff knows or has reason to know of the harm, "certain wrongs are considered to be continuing wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act." *Leonhard* v. *United States*, 633 F.2d 599, 613 (2d Cir. 1980). Here, although Plaintiff should have known of the initial harm in 2009, Judge Knipps's 2015 Order denying Plaintiff visitation cited the August 18, 2009 report. Under a theory of continuing wrong, Plaintiff could argue that the statute of limitations runs from May 11, 2015, the date of the last wrong.

Unfortunately, the continuing wrong doctrine is a narrow exception, and it does not allow Plaintiff here to circumvent the statute of limitations. "[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo* v. *City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). The instant action is distinguishable from those cases where the Second Circuit is more likely to find a continuing wrong — for example, cases of workplace harassment. *See, e.g., Cornwell* v. *Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Here, Arreola's alleged

wrongdoing in supervising the drafters of the 2008 and 2009 reports is best construed as one or more discrete acts, and not a continuing pattern that included the Family Court Order six years later. *See Rasko* v. *N.Y.C. Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) (summary order) (finding that three discriminatory denials of leave that occurred in 2010 and 2012 were not part of a continuing pattern of other discriminatory acts committed by the same supervisor in 2015 and 2016). In point of fact, Arreola had no involvement in that proceeding. Judge Knipps merely referred back to her report, which was available on the record. Because Arreola's conduct does not constitute a continuing wrong, Plaintiff's claims arising from the 2008 and 2009 reports remain untimely.

### 2. Defendants Manfreda and Arreola Are Not State Actors for the Purposes of § 1983

Although Plaintiff's claims against Manfreda, and a portion of his claims against Arreola, are not time-barred, all claims against Manfreda and Arreola are subject to dismissal based on Plaintiff's failure to allege state action.

Section 1983 provides a remedy when a state actor deprives a plaintiff of federally protected rights. *See* 42 U.S.C. § 1983; *Flagg Bros., Inc.* v. *Brooks*, 436 U.S. 149, 155-57 (1978). Generally, private parties are not liable under § 1983, and the Court may dismiss a complaint that fails to allege state action. *See DeMatteis* v. *Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds*, 520 F.2d 409 (2d Cir. 1975). However, "state action may be found when "there is such a 'close nexus

between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Abdullahi* v. *Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (quoting *Brentwood Acad.* v. *Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

*First*, the Court addresses Plaintiff's argument that Arreola and Manfreda were state actors because they "performed the duties of state actors by submitting reports and entering the courts and giving opinions[.]" (May 30 Tr. 50:21-51:01). To review, both Arreola and Manfreda were clinicians employed by private organizations. (*Id.* at 38:03-08; August 18, 2019 Report). At the time in question, Arreola was employed by the Family Peace Program, a private organization that provides mental health services to children. (August 18, 2019 Report). Following the attack, the Child attended weekly sessions with FPP counselors at New York Presbyterian Hospital, a private hospital system in New York City. (*Id.*). For her part, Manfreda worked as a social worker by Lawyers for Children, a nonprofit law firm. (May 30 Tr. 38:03-08). Lawyers for Children was appointed by the court to represent the interests of Plaintiff's daughter in the Family Court visitation proceedings. (*Id.*). During the course of that representation, Manfreda met with the Child. (*Id.*).

Private social workers and counselors, like Manfreda and Arreola, typically do not qualify as state actors under § 1983. *See, e.g.*, *Koulkina* v. *City of New York*, 559 F. Supp. 2d 300 (S.D.N.Y. 2008) (finding that a social worker who was employed by a private hospital and held a counseling session with the plaintiffs was not a state actor under § 1983). Nor is Manfreda a state actor

simply because Lawyers for Children was appointed by the Family Court. *See DeCrenza* v. *Children's Law Ctr.*, No. 14 Civ. 3921 (KBF), 2014 WL 12783237, at *3 (S.D.N.Y. June 6, 2014) (holding that employees of the Children's Law Center, who were appointed by the court to represent the plaintiff's daughter during custody proceedings, were not state actors under § 1983). Because each Defendant "exercised their independent and professional judgment" in the interest of the Child, *id.*, and counseled the Child in their "capacity as a private provider of medical care," *Kia P.* v. *McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000), neither is subject to liability under § 1983.

*Next*, the Court will consider the argument — again, not explicitly raised by Plaintiff — that Manfreda and Arreola, as private actors, were "willful participant[s] in joint activity with the State," and therefore are liable under § 1983. *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). Here, Plaintiff's allegations that Defendants "performed the duties of state actors" by submitting reports and arguing in court, does not meet that threshold. (May 30 Tr. 50:21-51:01). "Alleging merely that a private party regularly interacts with a state actor," or that "there were 'dialogues,' 'communications,' or 'interactions'" between private and state actors does not render a private individual liable under § 1983. *Fisk* v. *Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005). Simply providing the Family Court with allegedly defective reports does not support allegations that either Manfreda or Arreola should be treated as state actors. *See Luciano* v. *City of New York*, No. 09 Civ. 359 (DC), 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009); *see also Harrison* v. *New York*,

95 F. Supp. 3d 293, 324 (E.D.N.Y. 2015) ("[T]he fact that a private actor provided false or mistaken information to law enforcement does not render the supplier of information a state actor." (internal quotations omitted)).

Because Plaintiff fails plausibly to allege an essential element of his § 1983 claims against Manfreda and Arreola — that either Defendant acted under the color of state law — those claims must be dismissed. Having previously found that Plaintiff's claims against the City Defendants are untimely, this Court therefore grants the Moving Defendants' motions to dismiss the federal claims against them in their entirety.

### 3. Plaintiff's § 1983 Claims Fail on the Merits

Independently and in the alternative, the Court finds that each of Plaintiff's § 1983 claims fails on the merits. Each claim rests principally, if not exclusively, on Plaintiff's disagreement with the professional conclusions drawn by the Counselors. Liberally construing the Amended Complaint, the Court identifies seven claims: gender and race discrimination, conspiracy, malicious prosecution, due process, unlawful intrusion, coercion, and undue influence. The Court addresses each in turn.

### a. Gender and Race Discrimination

Plaintiff alleges that the Moving Defendants discriminated against him as "a single man of color." (Am. Compl. 6). During the pre-motion conference, Plaintiff clarified that he was bringing discrimination claims based on gender and race. (May 30 Tr. 30:07-08). Plaintiff argues that the Moving Defendants, all of whom were women, submitted reports based on "biased and detrimental

27

information," without ever attempting to contact Plaintiff.  (Am. Compl. 4).

"[A]ll policy and procedure," Plaintiff claims, required him to be reunited with the Child.  (*Id.* at 6).  Yet, the Moving Defendants did not facilitate a reconciliation, despite the fact that "[u]nder much harsher circumstances visitation was granted to incarcerated fathers[.]"  (Pl. Opp. 3).

The Court construes Plaintiff's claims to allege Fourteenth Amendment equal protective violations on the basis of race and gender, actionable pursuant to § 1983.  To state a claim for an equal protection violation, Plaintiff must show that the Moving Defendants intentionally discriminated against him, "either by adopting out of [discriminatory] animus policies which are facially neutral but have a ... discriminatory effect, or by applying a facially neutral policy in a ... discriminatory manner."  *Rivera-Powell* v. *N.Y.C. Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006).  "To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently."  *Gagliardi* v. *Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) (citing *City of Cleburne* v. *Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  A plaintiff's "conclusory allegations of disparate treatment" and "personal opinion that such treatment was motivated by discriminatory intent" are insufficient to state a Section 1983 intentional discrimination claim.  *Morales* v. *New York*, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014) (citations omitted).

The complaint is devoid of factual allegations that support a plausible inference of intentional discrimination.  To begin with, Plaintiff does not

sufficiently allege that he was treated differently from other similarly-situated parents because of his gender or race.  With particular respect to Plaintiff's gender discrimination claim, the Court finds that Plaintiff undermines his own argument when he alleges that "[u]nder much harsher circumstance[s] visitation was granted to incarcerated fathers ... in similar facts of incarceration." (Pl. Opp. 3).  Instead of plausibly alleging that other parents — presumably mothers, who were similarly situated to Plaintiff "in all material respects" — were granted visitation with their children, Plaintiff acknowledges that other men were granted visitation with their children.  *See Shumway* v. *United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) ("To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." (internal citations omitted)).  Logically, it follows from Plaintiff's argument that he was *not* denied visitation with the Child because of his gender.

Plaintiff's race-based discrimination claim does not fare any better.  In point of fact, the Amended Complaint only mentions Plaintiff's race once — when Plaintiff refers to himself as a "single man of color." (Am. Compl. 6).  Plaintiff does make several broad statements that, while not explicitly referencing race, could be liberally construed as such.  For example, Plaintiff alleges that "[t]here were plenty of far reaching cases that are exceeded that of his circumstances that were dealt with less harshness and opposition." (*Id.*).

Those conclusory statements, without any factual allegations, are insufficient to state a claim of race discrimination.  *See Rivera-Powell* v. *N.Y.C.*

*Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) ("A conclusory allegation of racial discrimination, without evidentiary support or allegations of particularized incidents, does not state a valid equal protection claim, and so cannot withstand a motion to dismiss.").  Plaintiff never identifies the individuals he to whom he alludes and does not allege that they engaged in comparable criminal conduct, or had children suffering from PTSD.  "While the standard for alleging a claim of discrimination is not high, a complaint cannot rest on mere legal conclusions, and the Court 'cannot infer discrimination from thin air.'" *Kuder* v. *City of Rochester*, 992 F. Supp. 2d 204, 211 (W.D.N.Y. 2014) (quoting *Lizardo* v. *Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001)).

### b.    Malicious Prosecution

Next, Plaintiff brings a malicious prosecution against the Moving Defendants.  "In order [for him] to prevail on a § 1983 claim against a state actor for malicious prosecution, … [P]laintiff must show a violation of his rights under the Fourth Amendment … and must establish the elements of a malicious prosecution claim under state law." *Manganiello* v. *City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted).  New York State law requires a plaintiff to prove "[i] the initiation or continuation of a criminal proceeding against plaintiff; [ii] termination of the proceeding in plaintiff's favor; [iii] lack of probable cause for commencing the proceeding; and [iv] actual malice as a motivation for defendant's actions." *Murphy* v. *Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).

Plaintiff fails to plead any of the requisite elements. Instead, Plaintiff vaguely alleges that the Moving Defendants "all continued concertedly to damage and destroy [his] relationship" with the Child. (Am. Compl. 4). He further alleges that Manfreda's affidavit was "clearly a copy" of Milano's prior report, and that she "conducted interviews" with the Child without Plaintiff's consent. (*Id.* at 5).

As a threshold matter, Plaintiff is barred from bringing a § 1983 claim predicated on malicious prosecution because, during the Family Court proceedings, Plaintiff was not subject to criminal liability. *See Spear* v. *Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). Because he was subject only to civil liability, "any abuse would have been malicious abuse of process rather than malicious prosecution." *Id.* "While section 1983 liability may be predicated on a claim for malicious prosecution … it may not be predicated on a claim for malicious abuse of process." *Id.*

That issue aside, Plaintiff also fails sufficiently to allege the remaining elements of a malicious prosecution claim under New York State law. *First*, as previously established, Manfreda and Arreola are not state actors. *Second*, the Family Court proceedings did not terminate in Plaintiff's favor. Rather, the instant action is premised on the fact that Plaintiff was denied visitation by the Court. *Third*, Plaintiff cannot allege a lack of probable cause for commencing either of the Family Court proceedings. With regards to the 2008 proceeding, Plaintiff's arrest following the domestic violence incident provided Pierre with

31

sufficient probable cause.  And it was Plaintiff, and not the Moving Defendants, who initiated the Visitation Proceeding in 2013.

Because Plaintiff fails to allege even one element of a New York State malicious prosecution claim adequately, the claims fail on the merits.

### c.    Due Process Violations

The Court construes the Amended Complaint to assert both substantive and procedural due process claims.  The Second Circuit has observed that "parents have a constitutionally protected liberty interest in the care, custody and management of their children." *Southerland* v. *City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (citing *Tenenbaum* v. *Williams*, 193 F.3d 581, 593 (2d Cir. 1999; *Troxel* v. *Granville*, 530 U.S. 57, 65-66 (2000)); *see generally Black* v. *Ranley*, No. 17 Civ. 9026 (KPF), 2018 WL 2766138 (S.D.N.Y. June 8, 2018). Therefore, the state's removal of a child may give rise to substantive and procedural due process claims.  *See Southerland*, 680 F.3d at 142.  In this context, "a procedural due process claim challenges the procedure by which a removal is effected, [while] a substantive due process claim challenges the fact of the removal itself." *See id.* (citing *Bruker* v. *City of New York*, 92 F. Supp. 2d 257, 266-67 (S.D.N.Y. 2000)).

Plaintiff broadly alleges that the Moving Defendants violated his due process rights when they "produce[d] defective documents and report[ed] without proper procedure and qualifications to do so." (Am. Compl. 7).  In addition, they "failed to follow appropriate measures," such as contacting Plaintiff, when interviewing the Child and filing their reports.  (*Id.*).  As it is

required to do, the Court liberally construes Plaintiff's allegations to attack two actions by the Moving Defendants that impinged on his right to have custody of his child: (i) the decision by Pierre to file the Abuse Petition, and (ii) the subsequent reports by the Moving Defendants.

### i. Procedural Due Process

Except in emergency circumstances, "before parents may be deprived of the care, custody, or management of their children without their consent, due process — ordinarily a court proceeding resulting in an order permitting removal — must be accorded to them." *Nicholson* v. *Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003) (internal citations and quotations omitted). "To show that emergency circumstances existed, the government must offer objectively reasonable evidence that harm was imminent." *Southerland*, 680 F.3d at 149. Although the Second Circuit "has not attempted to set forth exhaustively the types of factual circumstances that constitute imminent danger," it has "concluded that these circumstances include ... the risk that children will be left bereft of care and supervision." *Id.* (citing *Hurlman* v. *Rice*, 927 F.2d 74, 80 (2d Cir. 1991)).

Here, ACS removed the Child from the home on an emergency basis during the early morning of February 23, 2008. (Abuse Petition ¶ 5). Three days later, ACS sought, and was granted, a court order sanctioning the removal. (*Id.* at ¶¶ 1-10). The circumstances in which ACS found the Child warranted her immediate removal. Aside from the obvious safety concerns, had the Child not been removed from the home, she would have been left

33

unsupervised.  That night, her mother was sent to the hospital in critical condition, while her father was immediately taken into police custody.

In addition, Plaintiff failed to plead plausibly that the Moving Defendants violated his procedural due process rights after the Child was removed from the home when they met with the Child outside his presence and submitted reports to the Family Court.  Although parents have "a constitutionally protected liberty interest in the care, custody and management of their children," *Tenenbaum*, 193 F.3d at 593, the State also has a "traditional and transcendent interest in protecting the welfare of children," *Maryland* v. *Craig*, 497 U.S. 836, 837 (1990).  Because the parent's interest must be counterbalanced with that of the government, speaking with a child after receiving information about possible abuse in the home is not a violation of a parent's procedural due process right.  *See Phillips* v. *Cty. of Orange*, 894 F. Supp. 2d 345, 377-78 (S.D.N.Y. 2012) (finding "no authority, within the Second Circuit or without" to suggest that the plaintiff parents suffered a procedural due process violation where case worker met with child without parental involvement or consent).

### ii.        Substantive Due Process

Next, the Court explores whether Plaintiff suffered a substantive due process violation.  Families have "a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state."  *Tenenbaum*, 193 F.3d at 600 (internal citations omitted).  To state a substantive due process claim, Plaintiff must plausibly allege that

the removal of the Child "would have been prohibited by the Constitution even had the parents been given all the procedural protections to which they were entitled." *Southerland*, 680 F.3d at 142. The state action — here, the removal of the Child and the meetings with the Counselors — must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin* v. *Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009).

In the context of removal disputes, the Second Circuit has recognized that "a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected." *Southerland*, 680 F.3d at 152. "Underpinning the reasonable basis standard is the need for unusual deference to those who investigate allegations of child abuse or neglect." *Mortimer* v. *City of New York*, No. 15 Civ. 7186 (KPF), 2018 WL 1605982, at *14 (S.D.N.Y. Mar. 29, 2018).

Plaintiff's substantive due process claim against Pierre fails. The Abuse Petition alleges that Plaintiff stabbed the Child's mother seven times with a kitchen knife. (Abuse Petition Add. 1 ¶ 1). Pierre's decision to seek the removal of the Child from Plaintiff's custody on that record did not effect a deprivation of Plaintiff's interest in his family's integrity sufficient to shock the conscience. Furthermore, several days later, the Family Court held a hearing and issued an order upholding the removal. After this time, the separation of Plaintiff and the Child was no longer attributable to Pierre. *See Southerland*,

680 F.3d at 153 (stating that once "court confirmation of the basis for removal" is obtained, any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child).

In addition, the Counselor's subsequent reports, including any recommendations that Plaintiff not be awarded visitation, did not constitute a violation. Each of those reports outlines the reasoning behind their assessments, and their recommendations in the best interest of the Child, none of which shocks the conscience. The Court notes that Plaintiff himself all but concedes that the Moving Defendants had a reasonable basis for thinking the Child had been abused or neglected. *First*, on December 4, 2008, Plaintiff voluntarily submitted to a finding in Family Court that he had abused the Child. (Visitation Order 2). *Second*, Plaintiff alleges in the Amended Complaint that his treatment of the Child "was a case of [n]eglect not abuse." (Am. Compl. 5).

### d. Unlawful Intrusion, Coercion, and Undue Influence

Plaintiff brings his next claim, for unlawful intrusion, coercion, and undue influence, on behalf of the Child. (Am. Compl. 7; May 30 Tr. 56:02-07). Plaintiff alleges that the Child was coerced during her weekly sessions with counselors following the attack: "[A]t three years old she was subjected to these interviews and may have been influenced as to how she should answer." (May 30 Tr. 56:05-07). However, as a *pro se* litigant, Plaintiff is barred from bringing claims on behalf of the Child. *See Southerland*, 680 F.3d at 138.

Although Plaintiff has the right to act as his own counsel, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung* v. *Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Because Plaintiff lacks standing to assert a claim on the Child's behalf, these claims are dismissed.

### e. Conspiracy

In his final § 1983 claim, Plaintiff alleges that the Moving Defendants conspired against him. To state a § 1983 conspiracy claim, a plaintiff must allege facts showing (i) an agreement between two or more state actors or between a state actor and a private entity (ii) to act in concert to inflict an unconstitutional injury, and (iii) an overt act done in furtherance of that goal causing damages. *See Ciambriello* v. *County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that detailed fact pleading is required. *Bender* v. *City of New York*, No. 09 Civ. 3286 (BSJ), 2011 WL 4344203, at *1 (S.D.N.Y. Sept. 14, 2011) (quoting *Angola* v. *Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)). "Assertions lacking factual foundation ... are merely conclusory allegations and are insufficient to state a claim." *See Jackson* v. *County of Rockland,* 450 F. App'x 15, 19 (2d Cir. 2011) (summary order) (quoting *Kirch* v. *Liberty Media Corp.,* 449 F.3d 388, 398 (2d Cir. 2006)).

Here again, Plaintiff alleges that the Moving Defendants conspired to draft their reports, all the while excluding him from the process. (Am.

Compl. 4). In support of his claim, Plaintiff identifies two specific instances of misconduct. *First*, Plaintiff alleges that Manfreda's 2014 affidavit "mimicked" Milano's prior reports. (*Id.*). In the May 30, 2018 pre-motion conference, Plaintiff clarified his allegations: When drafting her report in 2014, Manfreda referred to Milano's prior reports on the record; she did not approach or speak to Milano in 2014. (May 30 Tr. 43:34-44:17). *Second*, Manfreda "contacted" Defendant Avery prior to submitting her report. (Am. Compl. 4).

As a threshold matter, § 1983 conspiracy claims fail where there is no underlying constitutional violation. *See Curley* v. *Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). As detailed above, Plaintiff has not plausibly alleged a constitutional violation, and therefore has also failed to allege conspiracy. However, independently, Plaintiff has not pleaded sufficient facts to show agreement and concerted action.

With regards to Manfreda reviewing Milano's report, Plaintiff has not alleged that the two Defendants ever met, spoke, or had any sort of contact with each other. In addition, the Court is familiar with Plaintiff's allegations regarding Manfreda's communication with Avery. As detailed in Judge Knipps's Visitation Order dismissing Plaintiff's Visitation Petition, Manfreda spoke with Avery, who was treating the Child at the time. (Visitation Order 11-12). In her conversation with Manfreda, Avery expressed concerns that visits with Plaintiff could further traumatize the Child. (*Id.*). Manfreda included that assessment in her affidavit to the Court. (*Id.*).

Manfreda's conversation with Milano makes clear that she was discharging her obligations as part of the team appointed by the Family Court to protect the Child's best interests.  Speaking with the Child's current healthcare provider does not lead to an inference that the women were conspiring against her father.  Plaintiff's claims are "unsupported, speculative, and conclusory," and he has not plausibly an actionable conspiracy under § 1983.  *Boddie* v. *Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

### 4.  Plaintiff's *Monell* Claim Fails on the Merits

Plaintiff raises a *Monell* claim against the City, suing it directly for constitutional violations pursuant to 42 U.S.C. § 1983.  *See Monell* v. *Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978).  To survive the motions to dismiss, Plaintiff must plausibly allege that the City had: "[i] an official policy or custom that [ii] causes the plaintiff to be subjected to [iii] a denial of a constitutional right."  *Zahra* v. *Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Plaintiff alleges that under the supervision of the FPP, Defendant Milano "constructed and distributed faulty reports that were damaging to his parental rights." (Am. Compl. 3).  Milano's reports were "approved by Erica [Whillheim]," and supported by "close associate" ACS.  (*Id.*).  Milano "conducted an interview" with the Child, "without ever meeting or requesting any interview with [Plaintiff], further demonstrating indifference and intentional damage." (*Id.*).

Plaintiff's *Monell* claim suffers from at least three defects.  *First*, the Amended Complaint fails to plead facts showing a constitutional violation.  For

that reason alone, Plaintiff's *Monell* claim must be dismissed. *See, e.g., Mitchell* v. *County of Nassau*, 786 F. Supp. 2d 545, 563 (E.D.N.Y. 2011) ("In order to state a viable *Monell* claim ... plaintiff must establish some constitutional violation." (collecting cases)); *see also Segal* v. *City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").

*Second*, as discussed above, Milano and Whillheim were not state actors. Plaintiff's threadbare allegation that New York Presbyterian Hospital acted as a partner and close associate of ACS is not sufficiently detailed to survive a motion to dismiss. *See Ciambriello*, 292 F.3d at 324 (dismissing plaintiff's § 1983 claims on the grounds that the Complaint only contained "conclusory allegation[s] that [the defendant] acted in concert with a state actor," and did not include "any factual allegations suggesting that [the defendant] conspired with the County").

*Third*, the "official policy" allegations also lack sufficient factual detail. The Amended Complaint offers little beyond, "This was clearly an[] on going custom and policy because for several years social worker A. Milano continued to operate and file reports under the same jurisdiction." (Am. Compl. 3). However, "[t]o state there is a policy does not make it so." *Betts* v. *Shearman*, No. 12 Civ. 3195 (JPO), 2013 WL 311124, at *16 (S.D.N.Y. Jan. 24, 2013), *aff'd*, 751 F.3d 78 (2d Cir. 2014); *see Lindsey* v. *Butler*, No. 11 Civ. 9102 (RWS), 2013 WL 3186488, at *5 (S.D.N.Y. June 24, 2013) (dismissing claims against

the City of New York where plaintiff only proffered conclusory allegation that officers acted according to municipal policy).  Further, Plaintiff goes on to contradict himself, alleging that Milano acted "outside the scope of her duty" when filing reports, and further "was not qualified and [was] unauthorized to [conduct an interview with Plaintiff's daughter] according to social service policy and guidelines."  (Am. Compl. 3).

### 5. The Court Retains, For Now, Supplemental Jurisdiction over Plaintiff's Remaining Claims Against the Moving Defendants

Because the Court dismisses Plaintiff's § 1983 constitutional claims against the Moving Defendants, his only remaining claims against them are state-law claims for intentional infliction of emotional distress, social worker malpractice, and injurious falsehood.  The Moving Defendants have asked the Court to dismiss these claims without prejudice.  As set forth below, the Court retains supplemental jurisdiction over these claims.

A district court has discretion to "decline to exercise supplemental jurisdiction" after "dismiss[ing] all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of New York*, 464 F.3d 255, 263 (2d Cir. 2006) ("[T]he decision to retain jurisdiction is discretionary and not a litigant's right[.]").  In making this determination, courts "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity.'"  *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)).  In general, "if the federal claims are dismissed before trial, … the state claims should be dismissed as well."  *United Mine Workers of Am.* v.

*Gibbs*, 383 U.S. 715, 726 (1966).  Moreover, "[a]lthough the exercise of

supplemental jurisdiction is discretionary, the ordinary case 'will point toward

declining jurisdiction over the remaining state-law claims.'"  *Jordan* v. *Chase*

*Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting *In re Merrill*

*Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)).

Here, all factors weigh in favor of declining supplemental jurisdiction

over Plaintiff's state-law claims — but for the fact that three Defendants remain

against whom the identical state-law claims are asserted.  For this reason, the

Court will deny without prejudice the Moving Defendants' request not to

exercise supplemental jurisdiction with the following understanding:  Discovery

will not proceed until the remaining Defendants have appeared, or have their

cases otherwise resolved by dismissal or default judgment proceedings.  If, at

that point, no federal claims remain, the Moving Defendants can renew their

request for the Court to decline to exercise supplemental jurisdiction.

In addition, the Court will not permit further amendment of the

pleadings with respect to the Moving Defendants.  Plaintiff has already had one

attempt to amend his pleadings to state valid claims.  More importantly, given

the foregoing reasoning, any further amendment would be futile, thus

providing a basis to deny a request for amendment had Plaintiff so moved.

*See, e.g., Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial

of motion to amend where complaint's deficiencies were "substantive" and thus

repleading was futile); *cf. Ganley* v. *City of New York*, 734 F. App'x 784, 786 (2d

Cir. 2018) (summary order) ("A district court should grant a *pro se* litigant leave

to amend 'at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (quoting *Cuoco*)).

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Plaintiff's claims against the Moving Defendants under 42 U.S.C. § 1983 are dismissed with prejudice, but the Court will retain supplemental jurisdiction over the state and local claims, at least until the other Defendants have responded or defaulted. The Clerk of Court is directed to terminate the motions at docket entries 61, 67, and 70.

As noted earlier in this Opinion, there are three Defendants who did not move to dismiss. Two of them, Erica Whillheim and Amy Milano, were not served within the 90-day period specified in Fed. R. Civ. P. 4. Plaintiff is ORDERED to advise the Court on or before **March 29, 2019**, if he wishes to continue the action against these two Defendants. If he does, he must also explain the diligence he has exhibited with respect to serving these two Defendants, and any other reasons that would constitute "good cause" and justify the Court extending the period of time within which service can be accomplished. With respect to Defendant Gloria Avery, Plaintiff should advise the Court as to whether he wishes to pursue this case against this Defendant and, if so, he should follow this Court's procedures for obtaining a default judgment, beginning with obtaining a Certificate of Default from the Clerk's Office.

SO ORDERED.

Dated:      February 26, 2019
               New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Kent Davis
123 West 135th Street, #5C
New York, NY 10030