UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENT DAVIS,<br><br>                    Plaintiff,<br><br>                -v.-<br><br>ERICA WHILLHEIM, CYNTHIA ARREOLA, DOMINIQUE MANFREDA, and CRYSTAL PIERRE,<br><br>                    Defendants. | 17 Civ. 5793 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

The events underlying this lawsuit are tragic from any perspective. In February 2008, Plaintiff lost custody of his three-year-old daughter (the "Child") after he stabbed her mother (the "Mother") in the presence of the Child. After the Family Court of the State of New York (the "Family Court") denied his request for visitation in 2015, Plaintiff, proceeding *pro se* and *in forma pauperis*, brought claims under 42 U.S.C. § 1983 against the Child's counselors and their supervisors — specifically, counselors Erica Willheim,[1] Cynthia Arreola, Amy B. Milano, Dominique Manfreda, and Gloria Avery (the "Counselors"), as well as New York City Administration for Children's Services ("ACS") social worker Crystal Pierre and the City of New York (together with Pierre, the "City Defendants," and together with the Counselors and Pierre, "Defendants"). Broadly, Plaintiff alleges that he has been denied a relationship with the Child because of a series of defective and biased reports submitted to

---

[1]   The Court refers to Defendant Willheim using the correct spelling of her name.

the Family Court by the Counselors.  In addition to his federal claims, Plaintiff asserts state-law claims over which he asks this Court to exercise supplemental jurisdiction.

In 2018, Defendants Arreola, Manfreda, and the City Defendants moved to dismiss the Amended Complaint.  In an Opinion and Order dated February 26, 2019, the Court dismissed the federal claims against those Defendants, but denied without prejudice the motion to dismiss the state-law claims against them.  *See Davis* v. *Whillheim*, No. 17 Civ. 5793 (KPF), 2019 WL 935214 (S.D.N.Y. Feb. 26, 2019) ("*Davis I*").  Now, Defendant Willheim, who had not been properly served at the time the Court issued its Opinion in *Davis I*, moves to dismiss all of the claims against her, and Manfreda and the City Defendants renew their motions to dismiss the state-law claims pending against them.  For the reasons explained below, the federal claims against Willheim are dismissed, and the Court declines to exercise supplemental jurisdiction over the state-law claims in this action.

## BACKGROUND

**A.   Factual Background**[2]

The Court assumes the parties' familiarity with the facts in this case, and refers those seeking further details to the Court's prior Opinion and Order in

---

[2] This Opinion cites to the facts as recited in *Davis I*.  That Opinion draws facts principally from Plaintiff's Amended Complaint (Dkt. #9), which facts are taken as true for the purposes of the pending motion, and the transcript of the Court hearing on May 30, 2018 (Dkt. #51 ("May 30 Tr.")), at which Plaintiff made certain factual assertions.

this case. *See Davis I*, 2019 WL 935214, at *1-5. In this Opinion, the Court provides only a brief recitation of those facts.

On February 22, 2008, Plaintiff stabbed his wife seven times with a kitchen knife while the Child was in the same apartment. *Davis I*, 2019 WL 935214, at *2. Plaintiff called the police; when the police arrived, Plaintiff was taken into custody, the Mother was taken to the hospital, and the Child was placed in the custody of ACS. *Id.* Plaintiff was later convicted of first-degree assault and endangering the welfare of a child. *Id.* He was incarcerated until 2017. *Id.*

On February 26, 2008, ACS filed the Abuse Petition in Family Court, alleging that Plaintiff abused the Child and requesting that the removal of the Child be sanctioned by court order. *Davis I*, 2019 WL 935214, at *2. Family Court Judge Susan K. Knipps upheld the removal of the Child and placed her in ACS's custody. *Id.* Eventually the Mother recovered from her injuries and regained custody of the Child. *Id.*

---

As explained in *Davis I*, the Court relies on certain documents outside of the pleadings that are integral to Plaintiff's Amended Complaint. *Davis I*, 2019 WL 935214, at *6. These documents include: (i) the Petition dated February 26, 2008, filed by ACS pursuant to Article 10 of the New York Family Court Act, alleging that Plaintiff abused the Child (Schnittman Decl., Ex. A (Dkt. #62-1 (the "Abuse Petition"))); the Family Court Order issued by Judge Susan K. Knipps on February 26, 2008, upholding the removal of the Child (Schnittman Decl., Ex. B (Dkt. #62-2)); and the Family Court Order issued by Judge Knipps on May 11, 2015 (Schnittman Decl., Ex. F (Dkt. #62-6)). The Court also takes into consideration the 2008 and 2009 reports signed by Defendants Milano, Arreola, and Willheim, attached to the Declaration of Evan Schnittman as Exhibit I (Schnittman Decl., Ex. I (Dkt. #62-9)). The manner in which the Court may consider these documents is discussed in *Davis I*, 2019 WL 935214, at *6. Where the Court cites to *Davis I*, it incorporates the record citations contained in that Opinion.

3

On June 12, 2008, while incarcerated, Plaintiff filed a motion seeking visitation with the Child. *Davis I*, 2019 WL 935214, at *2. The Family Court denied Plaintiff's request based, at least in part, on several reports from the Child's counselor, Defendant Milano. *Id.* At the time in question, Milano was a licensed social worker at the Family Peace Program, an organization that provides mental health services to children who have witnessed various forms of trauma, including domestic violence. *Id.* After the attack, Milano began meeting with the Child and the Mother once a week for one hour at a time. *Id.* Beginning in May 2008, Milano began submitting reports to the Family Court regarding the Child's progress. *Id.* at *3.[3]

In the first report, dated May 30, 2008, Milano concluded that the Child ███████████████████████████████████████████████ ███████████████████████████ (Schnittman Decl., Ex. I at May 30, 2008 Report). Milano recommended ███████████████████████ ██████. (*Id.*). In the second report, dated July 25, 2008, Milano noted that the Child ████████████████████████ and █████████ ████████████████████████████████████████████████ ████████████████████. (*Id.* at July 25, 2008 Report). In the third report, dated November 13, 2008, Milano reported ████████████████████ ████████████████████████████ (*Id.* at November 13, 2008 Report). However, Milano stated that ██████████████████████

---

[3]  Because of their sensitive nature, these materials have been redacted from the publicly-filed version of this Opinion. The unredacted version of the Opinion will be filed under seal, viewable by the Court and the parties only.

██████████████████████████████████████████████████

████████████████████████████████████████. (*Id.*).

For that reason, Milano again recommended that, ████████████

██████████████████████████████████████████████████.

(*Id.*). The fourth report, dated February 6, 2009, stated that the Child ██

████████████████████████, but again recommended that ████████

██████████████████████████████████████████

████████████████████████████████. (*Id.* at February 6, 2009

Report).

The fifth and final report was dated August 18, 2009. (Schnittman Decl., Ex. I at August 18, 2009 Report). Unlike the preceding four reports, which were signed only by Milano, the August 18, 2009 report was signed by three Defendants with different roles at Family Peace Project: Milano as Treating Clinician; Erica Willheim as Clinical Supervisor; and Cynthia Arreola as Project Manager. (*Id.*).[4] Similar to the prior reports, the August 2009 report described ████████████████████████████████████. (*Id.*). The report ████████

██████████████████████████████████████████████████

████████████████████████████████. (*Id.*).

On December 4, 2008, Plaintiff voluntarily submitted to a finding that he abused the Child, based on the allegations in the Abuse Petition. *Davis I*, 2019

---

[4]  Plaintiff alleges that *all* reports drafted by Defendants Pierre, Milano, Manfreda, and Avery were drafted under the supervision of Defendants Willheim and Arreola. *Davis I*, at *3. Plaintiff further alleges that Milano's actions "were approved by Erica Whillheim, a staff supervisor who signed on these reports under [New York-Presbyterian Hospital] title headings." (Amended Complaint 3).

5

WL 935214, at *3.  In April 2009, Judge Knipps ordered that the Child be released into the custody of her Mother with the supervision of ACS.  *Id*.  Several months later, on October 6, 2009, Judge Knipps granted ACS's request to modify the order and terminate ACS's supervision of the case.  *Id*.  Judge Knipps invited Plaintiff to file a visitation petition in the future if and when he believed he could establish that visitation was in the Child's best interests.  *Id*.

On April 12, 2013, Plaintiff filed a petition in the Family Court seeking visitation with the Child.  *Davis I*, 2019 WL 935214, at *3.  On May 11, 2015, Judge Knipps denied Plaintiff's petition, finding that, despite completing the anger management course, Plaintiff had failed to plead a sufficient change of circumstances such that visitation would serve the Child's best interests.  *Id*.  Judge Knipps relied on the clinician recommendations in the August 18, 2009 report signed by Defendants Milano, Willheim, and Arreola.  *Id*. at *3-4.  She also relied on an affidavit from Defendant Manfreda, which concluded ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id*. at *4.  Plaintiff alleges that Manfreda's affidavit relied on and "mimicked" Milano's earlier reports.  *Id*.

Based on the record before her, Judge Knipps dismissed Plaintiff's petition without prejudice, and invited Plaintiff to refile "at a future time when circumstances have sufficiently changed as to warrant revisiting the issue of visitation."  *Davis I*, 2019 WL 935214, at *4.  Plaintiff subsequently appealed the court's order to the Appellate Division, First Department, which affirmed Judge Knipps's order on December 1, 2016.  *Id*.

6

### B.    Procedural Background

#### 1.    The Amended Complaint and Initial Service Issues

Plaintiff filed the Amended Complaint in this case on December 7, 2017. (Dkt. #9). Since Plaintiff had been granted *in forma pauperis* status (*see* Dkt. #6), he received assistance from the United States Marshals Service in effecting service on Defendants. (*See* Dkt. #11, 19, 27, 28, 29, 30, 31). Shortly after filing the Amended Complaint, Plaintiff caused it to be served on Defendant Arreola (Dkt. #27) and Defendant Avery (Dkt. #30), and the City Defendants waived service (Dkt. #17). However, the Marshals were unable to serve Defendants Willheim, Milano, and Manfreda at the addresses provided by Plaintiff. (Dkt. #26, 28, 29). Sometime thereafter, Plaintiff provided the Court with new addresses for Defendants Willheim, Milano, and Manfreda, and on May 2, 2018, the Court ordered the Marshals to serve those Defendants at the new addresses. (Dkt. #45). Counsel for Defendant Manfreda entered a notice of appearance on the record on May 29, 2018 (*see* Dkt. #47), but the Marshals' second attempt to serve Defendants Willheim and Milano was unsuccessful (Dkt. #56, 60).

#### 2.    The First Round of Motions to Dismiss and the Court's Opinion in *Davis I*

In July 2018, Defendants Manfreda, Arreola, and the City Defendants moved to dismiss the Amended Complaint. (Dkt. #61-63, 67-72). On February 26, 2019, the Court issued its Opinion and Order in *Davis I*. In that Opinion, the Court held that Plaintiff's § 1983 claims against the City Defendants were time-barred because they flowed exclusively from the Abuse

7

Petition filed by ACS employee Pierre on February 26, 2008, more than nine years prior to the filing of this action and six years after the statute of limitations had expired. *Davis I*, 2019 WL 935214, at *7. The Court dismissed Plaintiff's § 1983 claims against Manfreda and Arreola after concluding that they were not state actors. *Id.* at *9-10. The Court explained that both Arreola and Manfreda were clinicians employed by private organizations — Arreola by the Family Peace Program, a private organization that provides mental health services to children, and Manfreda as a social worker by Lawyers for Children, a nonprofit law firm. *Id.* at *9. The Court held that because Arreola and Manfreda had counseled the Child in their capacities as private providers of medical and mental health care, neither was subject to liability under § 1983. *Id.* at *10.

The Court went on to explain that each of Plaintiff's § 1983 claims — which the Court liberally construed as claims for gender and race discrimination, conspiracy, malicious prosecution, due process, unlawful intrusion, coercion, and undue influence — also failed on the merits. *Davis I*, 2019 WL 935214, at *10. *First*, the Court explained that Plaintiff's claim for gender and race discrimination failed on the merits because the Amended Complaint was devoid of factual allegations supporting a plausible inference of intentional discrimination; Plaintiff had not sufficiently alleged that he had been treated differently from other similarly-situated parents because of his gender or race. *Id.* at *11. *Second*, the Court held that Plaintiff had not alleged a single element of a New York State malicious prosecution claim, and in any

8

event, Plaintiff was barred from bringing a malicious prosecution claim because he was not subject to criminal liability during the Family Court proceedings. *Id.* at *12. *Third*, the Court found that Manfreda, Arreola, and the City Defendants had not violated Plaintiff's procedural due process rights either in removing the Child from the home on an emergency basis following the February 22, 2008 incident, or in speaking to the Child without Plaintiff's consent after the alleged abuse. *Id.* at *12-13. *Fourth*, the Court held that Plaintiff did not state a claim for a violation of his substantive due process rights because Pierre's decision to seek the removal of the Child from Plaintiff's custody, and the Counselors' subsequent reports — including the recommendations ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ — did not shock the conscience. *Id.* at *13-14. *Fifth*, the Court held that Plaintiff, as a *pro se* litigant, was barred from bringing unlawful intrusion, coercion, and undue influence claims on behalf of the Child. *Id.* at *14. *Sixth*, the Court held that Plaintiff's § 1983 conspiracy claim failed because he had not sufficiently alleged an underlying constitutional violation. *Id.* at *15. *Seventh*, the Court explained that Plaintiff's *Monell* claim failed because: (i) the Amended Complaint failed to plead facts showing a constitutional violation; (ii) Plaintiff had not adequately alleged state action; and (iii) the "official policy" allegations lacked sufficient factual detail. *Id.* at *15-16.

After dismissing all of the § 1983 constitutional claims against Manfreda, Arreola and the City Defendants, the Court explained that Plaintiff's only remaining claims were his state-law claims for intentional infliction of

9

emotional distress, social worker malpractice, and injurious falsehood. *Davis I*, 2019 WL 935214, at *16. The Court stated that all factors weighed in favor of declining supplemental jurisdiction over Plaintiff's state-law claims — but for the fact that three Defendants remained in the action against whom the identical federal and state-law claims remained pending. *Id.* Thus, the Court denied, without prejudice, Manfreda's, Arreola's, and the City Defendants' request for the Court to decline to exercise supplemental jurisdiction, with the following understanding:

> Discovery will not proceed until the remaining Defendants have appeared, or have their cases otherwise resolved by dismissal or default judgment proceedings. If, at that point, no federal claims remain, the Moving Defendants can renew their request for the Court to decline to exercise supplemental jurisdiction.

*Id.* The Court also ordered Plaintiff to advise the Court, on or before March 29, 2019, if he wished to continue the action against Willheim and Milano, and if so, to explain the diligence he had exhibited with respect to serving them. *Id.* at *17.

### 3. The Post-*Davis I* Service Issues and the Renewed Motions to Dismiss

On March 28, 2019, Plaintiff requested more time to serve Willheim and Milano and notified the Court that he intended to pursue a default judgment against Avery. (Dkt. #95). The Court granted Plaintiff additional time, until May 16, 2019, to serve Willheim and Milano. (Dkt. #96). On May 2, 2019, Plaintiff obtained a Clerk's Certificate of Default against Avery. (Dkt. #99).

On August 27, 2019, the Court issued an order addressing the outstanding service issues. (Dkt. #103). The Court dismissed the action against Milano because: (i) she had not been served as of that date; (ii) Plaintiff had not made further efforts to serve her; and (iii) the Court's own efforts to locate Milano had proven unsuccessful. (*Id.*). The Court had also, at that time, learned that Willheim had recently been made aware of the lawsuit and had hired counsel. (*Id.*). Counsel for Willheim notified the Court that she would accept service on Willheim's behalf and that she would like to file a motion to dismiss. (*Id.*). Accordingly, the Court set a briefing schedule for Willheim's motion to dismiss. (*Id.*). The briefing schedule required Willheim to file her motion by October 4, 2019, and ordered Plaintiff to file any opposition by November 18, 2019. (*Id.*). In the same order, the Court also notified Plaintiff that to obtain a default judgment against Avery, he would need to proceed by way of an Order to Show Cause by September 27, 2019. (*Id.*).

Prompted by the Court's order addressing outstanding service issues in this matter, both Manfreda and the City Defendants requested that the Court permit them to renew their motions to dismiss the state-law claims against them. (Dkt. #106, 109). The Court granted Manfreda's request and ordered her to file her motion on the same briefing schedule as Willheim's motion to dismiss. (Dkt. #108). The Court also granted the City Defendants' request, and provided the City Defendants with a more generous briefing schedule than for Willheim and Manfreda. (Dkt. #114).

On October 3, 2019, Willheim filed her motion to dismiss. (Dkt. #110-12). The next day, Manfreda filed her renewed motion to dismiss the state-law claims pending against her. (Dkt. #118-119). On October 7, 2019, having not heard anything from Plaintiff regarding an order to show cause against Avery, the Court dismissed the claims against her. (Dkt. #120). Plaintiff's oppositions to both Willheim's and Manfreda's motions were due on November 18, 2019. (*See* Dkt. #103, 108). However, Plaintiff did not file anything on the docket, and the Court did not hear from Plaintiff regarding any opposition.

On December 11, 2019, the Court ordered Plaintiff to notify the Court by December 23, 2019, regarding whether he would oppose Willheim's and Manfreda's motions. (Dkt. #126). The Court warned Plaintiff that if it did not hear from him by that date, it would deem the motions fully submitted and take the unopposed motions under review. (*Id.*).

On January 13, 2020, the City Defendants filed their renewed motion to dismiss. (Dkt. #127-130). Plaintiff's opposition to the City Defendants' motion was due on February 28, 2020. (Dkt. #122). However, Plaintiff never submitted an opposition to the City Defendants' motion and the Court never heard from Plaintiff regarding any opposition to such motion.

On February 21, 2020, the Court deemed Willheim's and Manfreda's motions fully submitted (Dkt. #133), and on March 31, 2020, the Court

deemed the City Defendants' motion fully submitted (Dkt. #135).  Accordingly, all three unopposed motions are now ripe before the Court.[5]

## DISCUSSION

### A. Applicable Law

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *N.J. Carpenters Health Fund* v. *Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013).  But while a plaintiff must demonstrate the plausibility of his claims, he need not show that a judgment in his favor is probable.  *Iqbal*, 556 U.S. at 678.[6]

---

[5] Plaintiff's last filing on the docket in this case, which has also been his most recent communication with the Court, was on May 14, 2019.  (*See* Dkt. #100).

[6] This standard remains the same even where the motion is unopposed:

> We have held with respect to a motion pursuant to Fed. R. Civ. P. 12(c) to dismiss an action on the basis of the pleadings, that "[w]here ... the pleadings are themselves sufficient to withstand dismissal, a failure to respond to a 12(c) motion cannot constitute 'default' justifying dismissal of the complaint." *Maggette* v. *Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983).  The same principle is applicable to a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss an action on the basis of the complaint alone. Such motions assume the truth of a pleading's factual allegations and test only its legal sufficiency. *See, e.g.*, *De Jesus* v. *Sears, Roebuck & Co., Inc.*[,] 87 F.3d 65, 69 (2d Cir. 1996). Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is

Moreover, the Court is obligated to construe the submissions of a *pro se* litigant like Plaintiff liberally "to raise the strongest arguments they suggest." *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see generally McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017). To this end, the Court has considered factual assertions made by Plaintiff during the pre-motion conference on this matter and in the papers he submitted in opposition to the prior round of motions to dismiss filed in this case. *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

**B.     Analysis**

  **1.     The Court Dismisses the Federal Claims Against Willheim Because She Was Not a State Actor**

The federal and state-law claims against Willheim in this action are identical to those against Arreola. As explained below, the Court dismisses the federal claims against Willheim for the same reason it dismissed the federal claims against Arreola and Manfreda — because she is not a state actor.

Section 1983 provides a remedy when a state actor deprives a plaintiff of federally protected rights. *See* 42 U.S.C. § 1983; *Flagg Bros., Inc.* v. *Brooks*, 436 U.S. 149, 155-57 (1978). Generally, private parties are not liable under

---

sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.

*McCall* v. *Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).

14

§ 1983, and the Court may dismiss a complaint that fails to allege state action. *See DeMatteis* v. *Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds*, 520 F.2d 409 (2d Cir. 1975). However, "state action may be found when "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Abdullahi* v. *Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (quoting *Brentwood Acad.* v. *Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

In his Complaint, Plaintiff suggests Willheim was a state actor because the Family Peace Project "acted as a partner and close associate of [ACS] in support of the social workers actions via employment and supervision." (Amended Complaint 3). But this statement, standing alone, falls far short of plausibly alleging that a social worker employed by a private institution was acting under color of state law. Like Arreola and Manfreda, Willheim was a clinician employed by a private organization. *Davis I*, 2019 WL 935214, at *3. More specifically, Willheim, like Arreola, was employed by the Family Peace Program, a private organization that provides mental health services to children. *Id.*; *id.* at *9. Following the attack, the Child attended weekly sessions with Family Peace Program counselors at New York Presbyterian Hospital, a private hospital system in New York City. *Id.* at *9.

Private social workers and counselors, like Willheim, typically do not qualify as state actors under § 1983. *See, e.g., Koulkina* v. *City of New York*,

15

559 F. Supp. 2d 300, 321 (S.D.N.Y. 2008) (finding that a social worker who was employed by a private hospital and held a counseling session with the plaintiffs was not a state actor under § 1983); *DeCrenza* v. *Children's Law Center*, No. 14 Civ. 3921 (KBF), 2014 WL 12783237, at *2 (S.D.N.Y. June 6, 2014) (holding that private social worker who submitted report to family court was not acting under color of state law and thus not subject to suit under § 1983). Because Willheim counseled the Child in her "capacity as a private provider of medical care," *Kia P.* v. *McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000), she is not subject to liability under § 1983.

Nor can Willheim be held liable under a § 1983 as a "willful participant in joint activity with the State." *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). Here, Plaintiff's allegations that the Counselors "performed the duties of state actors" by submitting reports and arguing in court do not meet that threshold. (May 30 Tr. 50:21-51:01). "Alleging merely that a private party regularly interacts with a state actor," or that "there were 'dialogues,' 'communications,' or 'interactions'" between private and state actors does not render a private individual liable under § 1983. *Fisk* v. *Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005). There is no indication that Willheim's actions were controlled by the state or that her conduct was otherwise fairly attributable to the state. As the Court has already decided, simply providing the Family Court with allegedly defective reports does not establish that Willheim should be treated as a state actor. *See Luciano* v. *City of New York*, No. 09 Civ. 359 (DC), 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009); *see also*

16

*Harrison* v. *New York*, 95 F. Supp. 3d 293, 324 (E.D.N.Y. 2015) ("[T]he fact that a private actor provided false or mistaken information to law enforcement does not render the supplier of information a state actor." (internal quotations omitted)).

Because Plaintiff fails plausibly to allege an essential element of his § 1983 claims against Willheim — that Willheim acted under the color of state law — his federal claims against her must be dismissed. And, as a further point, Plaintiff's federal claims fail on the merits for the same reasons that the Court held in *Davis I*. *See Davis I*, 2019 WL 935214, at *10-16.

### 2. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claims

In *Davis I*, the Court read Plaintiff's Amended Complaint as raising state-law claims for intentional infliction of emotional distress, social worker malpractice, and injurious falsehood. *Davis I*, 2019 WL 935214, at *16. The Court chose to retain supplemental jurisdiction over those claims for the sole reason that, at that time, federal claims remained pending against Defendants Willheim, Milano, and Avery. However, now that the federal claims against Willheim have been dismissed, and that Milano and Avery have been dismissed from the suit altogether, there are no federal claims remaining in this action.

A district court has discretion to "decline to exercise supplemental jurisdiction" after "dismiss[ing] all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of New York*, 464 F.3d 255, 263 (2d Cir. 2006) ("[T]he decision to retain jurisdiction is discretionary and not a litigant's right[.]"). In making this

17

determination, courts "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)). In general, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726 (1966). Moreover, "[a]lthough the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'" *Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)). The Second Circuit has deemed it proper to retain supplemental jurisdiction over state-law claims only in limited circumstances — in actions that implicate preemption issues; state-law claims that remain when federal claims are voluntarily dismissed days before the scheduled start of trial; and in one instance where, by the time federal claims are dismissed, discovery had been completed, the court had decided three dispositive motions, and the case was ready for trial. *Valencia ex rel. Franco* v. *Lee*, 316 F.3d 299, 305-06 (2d Cir. 2003).

Here, all factors weigh in favor of declining supplemental jurisdiction over Plaintiff's state-law claims. There has been virtually no discovery in this case; there have been no initial disclosures, no case management plan has been entered, no depositions have been taken, no expert discovery completed, and there is no trial date. Accordingly, sending the pendent claims to state court would not result in the wasteful and duplicative expenditure of

resources.  Further, the matter does not involve preemption issues.  Plaintiff can seek redress in state court, where he would be able to bring his state-law claims.  Accordingly, all of the facts and circumstances of this case weigh strongly in favor of this Court declining to exercise supplemental jurisdiction.  For this reason, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.  Those claims are dismissed without prejudice, and Plaintiff is free to pursue them further in state court.

## CONCLUSION

For the reasons set forth in this Opinion, Willheim's motion to dismiss is GRANTED insofar as it seeks dismissal of the federal claims against her in this action.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims in this action, and therefore those claims are DISMISSED without prejudice.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      April 17, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge


*Sent by First Class Mail to:*
Kent Davis
123 West 135th Street, #5C
New York, New York 10030